# In the United States Court of Federal Claims

No. 18-034
(Filed: January 31, 2020)

---

HEALTHESTATE, LLC,                                              **Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**                             **Defendant,**

**and,**

**ASM RESEARCH, LLC,**                                      **Third-Party Defendant.**

---

*Bryant Steven Banes*, Neel, Hooper, & Banes, PC, Houston, TX, for Plaintiff.

*Alex Hanna*, United States Department of Justice, Civil Division, *with whom were Scott Bolden*, of Counsel, United States Department of Justice, *Joseph Hunt*, Assistant Attorney General, *and Gary Hausken*, Director, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Ranganath Sudarshan*, Covington & Burling LLP, Washington, D.C., for Third-Party Defendant.

Keywords: Motion to Dismiss, RCFC 12(b)(1), Subject Matter Jurisdiction, 28 U.S.C. § 1500, Government Proxy, *Res Judicata*, Copyright Infringement, Pending Claims, *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 310–11 (2011), *National Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 17–19 (1955), *Davis v. United States*, 642 Fed. App'x 982, 985 (Fed. Cir. 2016), *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1018–19 (Fed. Cir. 1992).

## MEMORANDUM OPINION AND ORDER

**Tapp,** Judge.

On January 5, 2018, Plaintiff, HEALTHeSTATE, LLC ("HeS"), filed this suit against the United States ("the Government"), alleging one count of copyright infringement based on the Government's alleged unauthorized use of HeS's document management software. HeS's original complaint identifies as a defendant: "the United States government, including the Defense Health Agency and Department of Veterans' Affairs and any federal instrumentality, or other entity with government authorization and consent . . . ." (Compl. at 1–2, ECF No. 1).

On August 28, 2019, the Government notified ASM Research, LLC ("ASM") of its potential interest in this litigation as a third-party.[1] In response, ASM moved to dismiss, pursuant

---

[1] ASM was notified of its potential interest as a third-party pursuant to RCFC Rule 14(c). (Def.'s Notice to ASM, ECF No. 33). "Under this court's third party statute [Rule 14], a third party defendant which becomes such pursuant

to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that this suit is barred by 28 U.S.C. § 1500 because of the still-pending action between HeS and ASM in Virginia state court that is based on the same operative facts as this case. The Government did not participate in briefing on this motion. For the reasons set forth below, ASM's motion is **DENIED**.

## I.     Background[2]

HEALTHeSTATE, LLC was founded in 2005 by United States military veterans to provide healthcare consulting services and products to the Government and private entities. HeS's core product is an electronic health record ("EHR") tool "developed originally by the Government, then privatized and developed as a commercial off-the-shelf software product by HeS." (Compl. at 2).

In 2012, HeS entered into a subcontract agreement with ASM, under which HeS agreed to provide computer software services in support of ASM's prime contract with the U.S. Army for a veterinary records software platform.[3] (*Id.*; Third-Party Mot. to Dismiss at 4, ECF No. 37). Pursuant to the subcontract, HeS produced a modified version of its already-existing electronic health record ("EHR") product to facilitate management of veterinary records, resulting in the creation of a software known as Remote Online Veterinary Record or "ROVR." (Compl. at ¶¶ 4, 6). The subcontract provided that "'[t]he source code [for ROVR] was not to be used for any other purpose,' remained the property of HeS, and ASM[] was granted no license, except [as] necessary to perform the subcontract." (*Id.* at ¶ 6). Accordingly, "HeS is the sole authorized owner and copyright holder of the ROVR software and any underlying source code." (*Id.* at ¶ 5).

HeS's subcontract expired on May 7, 2014. (Compl. at ¶ 10). On May 27, 2014, without authorization and unbeknownst to HeS, ASM transferred the ROVR source code to the Defense Health Agency ("DHA"). (Compl. at ¶ 10). On May 29, 2014, the Government issued a Notice of Justification and Approval for a sole-source contract to ASM for "continued maintenance and technical support" of ROVR. (Compl. Ex. 7, ECF No. 1-7). The Government's justification for the sole-source award was that "ASM Research has proprietary rights to the basic software source code. . . . No other vendor can perform these tasks as they do not have access to the proprietary code." (*Id.*). On September 30, 2014, ASM was formally awarded the sole-source

---

to this type of notice is entitled to present its full defense to the plaintiff's claim." *Sun Shipbuilding & Dry Dock Co. v. United States*, 204 Ct.Cl. 915, 916 (1974).

[2] In the Court's June 17, 2019 Order and Opinion denying the Government's motion to dismiss, ECF No. 27 ("Opinion Denying Mot. to Dismiss"), the Court noted that despite the parties' multitude of filings, "much information of importance remains missing or unclear. Some of the dates, in this Order, for example, may not always seem to be in sync. The same may be true of other factual representations. But none of the inherent confusion has prevented a ruling on this preliminary motion." (Opinion Denying Mot. to Dismiss at 9). The confusion referenced in the Court's earlier opinion still remains but, similarly, does not preclude a ruling on this motion. However, because a § 1500 analysis focuses on the "state of things" at the time the suit is brought, *see Resources Invs., Inc. v. United States*, 785 F. 3d 660, 660 (Fed. Cir. 2015), the Court must look only to the Original Complaint, rather than HeS's First Amended Complaint.

[3] On December 13, 2013, ASM and HeS modified the subcontract to extend the period of performance from September 20, 2013 to May 7, 2014. (Compl. at 3).

contract. (Third-Party Mot. to Dismiss at 4). Thereafter, ASM was awarded additional contracts relating to EHR systems. (*See* Compl. at ¶¶ 11–16).

On October 1, 2014, HeS contacted DHA asserting that it was the sole owner of the ROVR software and source code. (*See* Compl. Ex. 8, ECF No. 1-8). On January 28, 2015, DHA responded, professing confusion and uncertainty as to the owner of the ROVR source code. (Compl. at ¶ 14; Compl. Ex. 9, ECF No. 1-9). Nevertheless, DHA continued to use the software. (Compl. at ¶ 14).

On October 3, 2016, HeS initiated suit in Virginia state court against ASM (and a related corporate entity), alleging violations of the Virginia Uniform Trade Secrets Act, conversion, tortious interference, unjust enrichment, fraud, and civil conspiracy. On January 5, 2018, Plaintiff filed this action against the United States alleging copyright infringement.

HeS contends it had proprietary rights in ROVR which it licensed to ASM under the parties' subcontract. In both suits, HeS alleges ASM used ROVR, without authorization, in performance of government contracts after HeS's subcontract expired. HeS seeks compensation for the unauthorized use of ROVR in both the Virginia state court action and here.

## II.    Standard of Review

The burden of establishing subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Whether a court has jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

When faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to the RCFC Rule 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Moreover, the Court may look to evidence outside of the pleadings in order to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). Such a waiver is found in 28 U.S.C. § 1498(b). This provision provides:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement ....

28 U.S.C. § 1498(b).

### III.   Discussion

In its Motion to Dismiss, ASM argues that this Court lacks jurisdiction to hear HeS's claims against the Government because 28 U.S.C. § 1500 imposes a jurisdictional bar where, as here, two suits are brought in different fora based on the same underlying operative facts. (Third-Party Mot. to Dismiss at 2, 8–16). ASM further argues that dismissing this action "pursuant to 28 U.S.C. § 1500 is consistent with the principles of *res judicata*. (*Id.* at 21–24).

In response, HeS argues that its two suits are not based on the same operative facts because "this case concerns conduct authorized by the Government and/or the Government's conduct whereas the Virginia lawsuit [concerns] . . . ASM[]'s misrepresentations and conduct." (Pl.'s Resp. at 2, ECF No. 42). HeS maintains that ASM's "status as a government contractor does not make that party an agent [or proxy] of the Government" for purposes of § 1500 (*Id.* at 7). Finally, HeS contends that the doctrine of *res judicata* is not implicated here. (*Id.* at 36–38). The Court agrees with HeS.

*A.  Section 1500*

The Supreme Court has explained that "[s]ince 1868, Congress has restricted the jurisdiction of the [Court of Federal Claims] and its predecessors when related actions are pending elsewhere." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 310–11 (2011) (hereinafter "*Tohono*"). The origin of 28 U.S.C. § 1500 can be traced back to the Reconstruction era. During the Civil War, the Captured and Abandoned Property Collection Act of 1863, ch. 120, 12 Stat. 820 (1863), allowed for the seizure and use of private property in rebel territory for use by the Union during the war. Unused property was sold at auction, and the proceeds deposited in the Treasury. David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L. J. 573, 575 (1967). Those with ownership claims to the seized property (usually cotton) were provided with a remedy in the Court of Claims, provided they could affirmatively prove that they had "never given any aid or comfort to the present rebellion." Act of 1863, ch. 120, 12 Stat. 820. These so-called "cotton claimants" often had trouble proving their Union loyalty in the Court of Claims, and therefore turned to other courts where they presented common law claims against individual federal officials, particularly treasury officials. Schwartz, 55 Geo. L. J. at 575–77.

In response, Congress amended the Act to include Section 8, a predecessor to 28 U.S.C. § 1500 ("Section 1500"). Act of June 25, 1868, § 8, 15 Stat. 75, 77 (1868). Its purpose, like that of the modern § 1500, was "to curb duplicate lawsuits brought by residents of the Confederacy" against the Federal Government. *Tohono*, 563 U.S. at 311–12; Schwartz, 55 Geo. L. J. at 574–80. 28 U.S.C. § 1500 extends the preclusive principles of *res judicata* to require an election between similar but separate suits against the United States and individual Government officials or agencies. *See National Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 17–18 (1955); *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1090–91 (Fed. Cir. 1999). Section 1500, in its current form, provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (1992). The statute has been interpreted as a "broad" jurisdictional bar when a related suit is pending elsewhere against a person who was "claiming or wielding federal authority" at the time the cause of action arose. *Tohono*, 563 U.S. at 312–13. The Supreme Court has explained that this is not a description of identity, but one of conduct. *See id*. at 312.

Thus, under § 1500, dismissal is compulsory when its three requirements are satisfied. First, the defendant-party in the two lawsuits must be: (1) the United States; (2) a party who acts directly or indirectly under the authority of the United States; or (3) a party who professes to act under the authority of the United States. 28 U.S.C. § 1500. Second, the claim pending in front of the Court of Federal Claims must share the same operative facts as that of the claim pending against the United States or an authorized party elsewhere. *Id*. Third, the other claim must be pending elsewhere at the time suit is filed in the Court of Federal Claims. *Id*. All three requirements must be satisfied for § 1500 to apply.

### B. ASM as a Government Proxy.

Section 1500's jurisdictional bar is not limited exclusively to actions against the Government, but also extends to government "proxies." *Tohono*, 563 U.S. at 312; *see also Nextec Applications, Inc. v. United States*, 114 Fed. Cl. 532, 537 (2014) ("[Section 1500] prevents a plaintiff from pursuing what is essentially the same case in multiple jurisdictions against the United States or its proxy."). However, the parties disagree on what specifically is necessary for a private party to be considered a government proxy for the purposes of § 1500.

ASM argues that a private party "act[s] or profess[es] to act, directly or indirectly under the authority of the United States," such that it may be considered a government proxy, when the conduct giving rise to a claim occurs in performance of a government contract and with the authorization and consent of the Government. (Third-Party Mot. to Dismiss at 16, 19). As such a party, ASM contends that it was a government proxy for the purposes of § 1500. HeS, on the other hand, argues that status as a government contractor does not make a party a government proxy and aptly points to the dearth of case law where private parties successfully invoked the § 1500 defense. (Pl.'s Resp. at 5–6, ECF No. 42).

Indeed, although the Federal Circuit has been presented with numerous opportunities to examine other aspects of § 1500, such as when a case is "pending" and whether the facts in the two suits "substantially overlap," there is little guidance regarding when a party is a government proxy. *See, e.g.*, *Philbert v. United States*, 779 F. App'x 733, 737 (Fed. Cir. 2019) (affirming dismissal under § 1500 where Plaintiff's suit against the Secretary of the U.S. Department of Veterans Affairs, was pending in district court); *Beberman v. United States*, 755 F. App'x 973, 974 (Fed. Cir. 2018), as amended (Nov. 5, 2018) (finding the plaintiff's actions against the State Department and the United States were not "for or in respect to" the same claims thus § 1500 did

not apply); *Davis v. United States*, 642 F. App'x 982, 983 (Fed. Cir. 2016) (district court complaint named the U.S. Secretary of Agriculture in his official capacity and four other officials in their individual capacities). The common thread from these cases is that an agency or department of the United States were named as the defendant in the pending action and thus, status as a party "acting or professing to act, directly or indirectly under the authority of the United States" could not be legitimately disputed. Other cases involved two suits against the United States, where the application of the statute was even clearer. *See, e.g.*, *Rojas-Vega v. United States*, 782 F. App'x 994 (Fed. Cir. 2019) (CFC suit dismissed because the "pending" district court suit was "based on substantially the same operative facts"); *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370 (Fed. Cir. 2017) (same); *Brandt v. United States*, 710 F.3d 1369, 1380 (Fed. Cir. 2013) (same).

Looking to the plain language and history of § 1500, a private entity does not become a government proxy merely by performing under a contract with the Government. Instead, to be classified as a "government proxy" for the purposes of § 1500, a party's role as a direct or indirect source of government authority must be incidental to some formal grant of power found in the Constitution, the United States Code and its authorized regulations, or some other proclamation carrying the force of federal law. *See Davis v. United States*, 642 Fed. App'x 982, 985 (Fed. Cir. 2016) (affirming dismissal of suit against USDA employees for actions taken pursuant to their roles as government officials); *National Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 17–19 (1955) (emphasizing the importance of acting pursuant to statutory authority to gain protection of § 1500). In other words, a private party must be formally authorized to *wield* or claim government authority to invoke the protection against duplicative litigation provided by § 1500.

The aim of the original statute as amended in 1868—which reads almost identically to § 1500 today—was to prevent duplicative suits against the Government.[4] *See Tohono*, 563 U.S. at 315. When the amended statute was passed, its sponsor, Senator George Edmunds of Vermont, explained:

> The object of this amendment is to put to their election that large class of persons having cotton claims *particularly, who have sued the Secretary of the Treasury and the other agents of the Government* in more than a hundred

---

[4] The Federal Circuit summarized the lineage of the statute in *UNR Indus., Inc. v. United States*:

> Section 8 was thereafter incorporated into the Revised Statutes of 1874. The few changes made to it then were not intended to alter its meaning in any way. Section 8 was renumbered as section 1067. . . . After the turn of the century, section 1067 was adopted without change as section 154 of the Judicial Code of 1911. . . . As part of the revision of the Judicial Code in 1948, Congress essentially reenacted section 154. . . . Thus, three changes were made to the statute. First, the language "or in the Supreme Court on appeal therefrom" was deleted as "unnecessary." Second, the phrase "against the United States" was added, making it clear that dual litigation against the United States, as well as against a federal officer, was barred. The third change was that the language "No person shall file or prosecute" was replaced by "The United States Court of Claims shall not have jurisdiction," confirming the jurisdictional bar against the Court of Claims earlier set out by the Supreme Court in *Ex Parte Skinner & Eddy Corp.*, 265 U.S. 86, 95 (1924).

962 F.2d 1013, 1018–19 (Fed. Cir. 1992) (citations omitted).

suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) (emphasis added).

In one of the earliest cases interpreting the modern iteration of § 1500, the Court of Claims considered whether the Reconstruction Finance Corporation ("RFC"), a corporation constituted by the Government under the Veterans Emergency Housing Act to "underwrite or guarantee markets for new type building materials and prefabricated houses," was a government proxy. *See National Cored Forgings Co. v. United States*, 132 Ct. Cl. 11 (1955). Operating as a government corporation, RFC entered into several "market guarantee" contracts with a private corporation that became the subject of two separate lawsuits: one in U.S. District Court for the District of Columbia and the other in the Court of Claims. *Id*. at 15.[5]

The Court of Claims found that RCF was a government proxy for purposes of § 1500, holding that government corporations with powers vested in them by an act of Congress are government proxies "when their acts are within [their] statutory authority[.]" *Id*. at 18. The Court explained: "[w]hen a Government corporation acting within the scope of its statutory authority makes a contract as the agent of the United States, the United States may be sued in this court as principal on the contract[]" but that "does not mean that the corporation may not be sued for its action." *Id*. The Court went on to reason that, by acting pursuant to its statutory authority, RFC contracted "both in its corporate capacity *and* as an agent of the United States" such that § 1500 might apply. *Id*. at 19 (emphasis added). In reversing its earlier decision, the Court distinguished between entites acting in their corporate capacity and those acting pursuant to statute, finding § 1500 applicable only to the latter. *Id*. at 17–18.

More recently, in *Davis v. United States*, this Court dismissed a suit brought against the Government, through the United States Department of Agriculture (USDA), in connection with the denial of a loan subordination request, where the plaintiff brought a parallel suit in district court against four USDA officials in their individual capacities for the same underlying conduct. 123 Fed. Cl. 235 (2015), *aff'd*, 642 Fed. App'x 982, 985 (Fed. Cir. 2016). The Court rejected the plaintiff's argument that the district court litigation was a *Bivens*[6] action and thus not a suit "pending against the United States or its agents" for purposes of § 1500, reasoning that in both complaints, "the named defendants . . . were acting or professing to act, directly or indirectly

---

[5] After World War II, a housing shortage was exacerbated by veterans returning to civilian life. Market guarantee contracts sought to increase and stabilize the production of housing materials during this time to boost housing supply. *See generally* William Remington, *The Veterans Emergency Housing Program*, 12 Law & Contemp. Probs. 143 (1947).

[6] "Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights." *Davis v. United States*, 123 Fed. Cl. 235, 240 n.3 (2015) (internal quotations and citations omitted); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

under the authority of the United States at the time that plaintiff's claims arose." *Id.* at 240. The Court noted that in the suit against the USDA officials, the complaint stated that "plaintiff's claims against these defendants arose when . . . managing plaintiff's loan subordination request on behalf of the USDA" and "characterizes the conduct that gave rise to these claims as the actions of either the USDA or the [Farm Service Agency]." *Id.* at 241. The Court explained that in so doing, "plaintiff acknowledges that the defendants named in his district court complaint were acting under the authority of the United States." *Id.*

From these cases, it follows that a private corporation, such as ASM, can be subject to suit for its conduct as a prime contractor while the Court of Federal Claims retains jurisdiction over a related action against the United States as a principal. Section 1500 bars duplicative suits against the government but does not protect non-government contractors that have no authority to wield the force of government. *See Tohono*, 563 U.S. at 313.

Here, unlike the treasury officials of the post-Civil War era statute or the government corporations established and managed according to an act of Congress, ASM can neither claim nor wield federal authority, other than that which it is contractually delegated. ASM is not a government-chartered corporation, an extension of the United States Government, or a government official being sued in an individual capacity. ASM was merely a private corporation that provided a product or service to the Army. It had no legitimate basis to claim or wield the authority vested in the federal government by the Constitution, statutes and regulations enacted thereunder, or some other source with the power of federal law. *See Davis v. United States*, 642 Fed. App'x 982, 985 (Fed. Cir. 2016); *National Cored Forgings*, 132 Ct. Cl. at 17–19. A contract is not itself a source of federal authority and, consequently, ASM's status as a government contractor affords it no more authority than the terms of the contracts it is awarded.

To this end, ASM is not a "person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States" within the meaning of 28 U.S.C. § 1500. Further, ASM's contract with HeS expired on May 7, 2014. (Compl. at ¶ 10). ASM transferred the source code to the Government on September 30, 2014, when it was awarded the sole-source contract. (Third-Party Mot. to Dismiss at 4). ASM was not performing under any government contract when it transferred the source code. As such, ASM has no legitimate basis to invoke its protection. Because the Court concludes that ASM is not a government proxy within the meaning of 28 U.S.C. § 1500, there is no need to discuss the other requirements for invoking the statute.

## C. Res Judicata

In light of the history discussed *supra*, the Court notes that this result is consistent with the preclusion principles that § 1500 was enacted to address. *See Matson Nav. Co. v. United States*, 284 U.S. 352, 355–56 (1932) (citing the statements of Senator Edmunds quoted *supra*), *superseded by statute*, Act of Jun. 25, 1948, ch. 646, § 1500, 62 Stat. 942. These principles were unique to the non-government party's identity as an individual or official capacity. *Tohono*, 563 U.S. at 315 ("The jurisdictional bar in § 1500 was enacted in part to address the problem that judgments in suits against officers were not preclusive in suits against the United States."). It follows that the modern statute operates to accomplish those same goals. *Id.* at 315–16.

*Res judicata* is premised on the concept that repetitive suits involving the same cause of action between the same parties or their privies should be barred once a court of competent jurisdiction has entered a final judgement on the merits. *Tohono*, 563 U.S. at 315; *see also Comm'r v. Sunnen*, 333 U.S. 591 (1948). "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Sunnen*, 333 U.S. at 597. This principle is not applicable when the parties are distinct.

ASM urges the Court to look to overlapping facts to determine the application of *res judicata* but fails to appreciate that ASM and the United States are distinct parties. Neither the Government nor ASM are in danger of double liability for the same conduct. And the Virginia state court decision will not bind this Court. The defendants are distinct entities that acted independently to produce two separate causes of action that the plaintiff has chosen to litigate in different fora. For these reasons, there is no merit to ASM's argument that applying § 1500 would comport with the principles of *res judicata*.

Moreover, as incident to the Government's limited waiver of sovereign immunity, the Court of Federal Claims is granted exclusive jurisdiction to hear copyright claims against the United States. *See* 28 U.S.C. § 1498; *Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 648 n. 11 (1999). If the United States is the alleged infringer, the plaintiff "*must* sue the Government in the United States Court of Federal Claims[.]" *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1859 (2019) (emphasis added); 28 U.S.C. § 1498(b). Accordingly, the Court of Federal Claims is the only forum in which a private party may seek and obtain redress for infringing activities by the Government.

This means that HeS is incapable of maintaining suit against the Government in Virginia because the United States has not consented to suits for monetary damages in state court for copyright infringement. The Government's limited waiver of sovereign immunity narrows the fora in which HeS might seek redress for copyright infringement damages to the Court of Federal Claims. Precluding such a suit from being heard in this Court would effectively bar HeS from suing the Government for its alleged misconduct anywhere. Thus, barring this claim under § 1500 would not only be unsupported by the doctrine of *res judicata*, but would also work manifest injustice against HeS.

### IV.    Conclusion

28 U.S.C. § 1500 affords protection from duplicative litigation exclusively to the United States and persons acting under color of federal authority. ASM's conduct undertaken in performance of its contracts with the United States does not satisfy this requirement. Thus, § 1500 does not bar HeS's action against the Government in this Court. This result is consistent with the doctrine of *res judicata*.

For the foregoing reasons, ASM Research's Motion to Dismiss is hereby **DENIED**. The parties are directed to file a joint status report **on or before February 14, 2020,** proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

<u>s/    David A. Tapp</u>
DAVID A. TAPP, Judge